IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PRO GOLF DISCOUNT OF BIRMINGHAM, INC., an Alabama corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | CV 02-J-1502-S |
| vs. | ) ) | |
| PRO GOLF OF AMERICA, INC., a Michigan corporation, | ) ) ) | |
| Defendant. | ) ) | |
| PRO GOLF OF AMERICA, INC., | ) ) | |
| Counter-Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| PRO GOLF OF BIRMINGHAM, INC. and SAMUEL W. GANNAWAY, | ) ) ) | |
| Counter-Defendants. | ) | |

ENTERED
FEB 05 2003

## MEMORANDUM OPINION

Pending before the court is counter-defendants Pro Golf of Birmingham and Samuel W. Gannaway's motion for summary judgment (doc. 10). The court has reviewed the counter-defendants' motion and the parties' other submissions.[1]

---

[1] The court notes that the counter-defendants have requested oral argument in relation to this motion. However, the court declines to hear oral argument since the court is of the opinion that oral argument would not assist the court in rendering a decision.

## I. Facts

On October 8, 1990, Pro Golf of America, Inc. ("Pro Golf") entered into a distribution agreement with Pro Golf of Birmingham, Inc. ("PGB"). Under this agreement, PGB acted as a distributor for golf merchandise provided by Pro Golf. PGB's Exh. A. This agreement provided that PGB would serve as Pro Golf's independent contractor rather than an employee. PGB's Exh. A at 9. A non-competition clause was also contained within this agreement that stated that PGB could not engage in any business that competed with that of Pro Golf for a period of 2 years after the termination of the agreement. PGB's Exh. A at 15.

On July 7, 1998, Samuel W. Gannaway ("Gannaway"), the president and a shareholder of PGB, entered into a personal guaranty agreement with Pro Golf which guaranteed all debts owed by PGB to Pro Golf. PGB's Exh. C. On October 25, 2000, the parties entered into a release agreement, as part of an addendum to the distribution agreement, which released PGB and its officers, employees and shareholders from any prior agreement or liability to, or with, Pro Golf. PGB's Exh. B.

During their relationship, both parties allege a variety of breaches on the other side's part in relation to the distributorship agreement. Pro Golf alleges that PGB has breached the agreement by failing to pay the royalties to Pro Golf that it was due and for failing to submit the proper reports relating to its revenue. Pro Golf's Exh. A at ¶ 22. PGB asserts that Pro Golf has violated the agreement by allowing competing distributors to operate in its territory. PGB's Exh. A at 2; Exh. E. These alleged competing

distributors include a website that sells Pro Golf's products over the internet. PGB's Exh. E. Subsequently, Gannaway has stated that Pro Golf attempted to coerce PGB into executing an agreement giving Pro Golf the right to make internet sales in PGB's exclusive distribution territory. PGB Exh. D at ¶ 7. Gannaway further asserts that Pro Golf has taken payments made by PGB to Pro Golf and used them for unauthorized purposes. PGB Exh. D at ¶ 3. For example, Gannaway contends that PGB paid Pro Golf money which was intended to pay a third party supplier, Cleveland Golf, for purchases, but Pro Golf appropriated this money for itself. *Id.*

PGB asserts that it stopped paying royalty payments to Pro Golf as a result of these alleged breaches by Pro Golf. PGB filed suit in this court. Pro Golf filed a counter-claim, which is the subject of this motion for summary judgment, alleging breach of contract on the part of PGB and a breach of the guaranty agreement by Sam Gannaway,.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

> party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case...A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not

preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III. Analysis

First, it is necessary to address Pro Golf's assertion that Gannaway has breached his guaranty agreement by failing to submit required reports and pay amounts owed by PGB to Pro Golf. The guaranty agreement signed by Gannaway provided that he guarantee all debts that PGB owed to Pro Golf. PGB at Exh. C. However, subsequent to signing this release, Pro Golf and PGB entered into a mutual release which states in pertinent part:

> Pro Golf hereby forever releases and discharges distributor [PGB] including its officers, shareholders, agents and employees (hereafter collectively referred to as Distributor) from any and all claims, damages, demands, causes of action, suits, duties, liabilities, and agreements of any nature and kind (whether known or unknown).

PGB's Exh. B at Addendum ¶ 5.

The Alabama Supreme Court has held that, "a release supported by valuable consideration and unambiguous in meaning will be given effect according to the intention of the parties from what appears in the four corners of the document itself, and parole evidence is not admissible to impeach or vary its terms." *Sheridan v. Board of Water and Sewer Commissioners of the City of Prichard*, 764 So.2d 526, 528 (Ala. 1999) quoting

*Wayne J. Griffin Electric, Inc. v. Dunn Construction Co.*, 622 So.2d 314, 317 (Ala. 1993). Whether a release is ambiguous is a question of law for the court. *Barker v. Blue Circle, Inc.*, 585 So.2d 868, 870 (Ala. 1991). The "four corners" of the release entered into by Pro Golf and PGB clearly and unambiguously releases PGB and anyone associated with it. Gannaway is both an officer and a shareholder of PGB and thus, he clearly falls within the language of those covered by this agreement. Exh. B at Addendum ¶ 5. The release serves to nullify any prior agreement of any kind and serves as a covenant by Pro Golf not to sue anyone under the agreement for anything. *Id.* This release is so broad that it cannot be interpreted any other way than as including a release of Gannaway from his guaranty agreement.

If Pro Golf had sought to exempt Gannaway's guaranty agreement from this broad release, it easily could have noted an exception. However, the release failed to include such an exception and accordingly, Gannaway is entitled to summary judgment on this claim.

Pro Golf assertions to the contrary are unavailing. First, Pro Golf argues that because Gannaway failed to sign this release in his individual capacity (whereas he signed the release in his individual capacity), it was not intended to release Gannaway individually from his guaranty. However, as discussed above, Gannaway is clearly included in those intended to be released by the release and Pro Golf has cited to no authority that requires the party being released to have signed that release.

Pro Golf also asserts that the actual guaranty agreement signed by Gannaway

indicates that the release did not apply to Gannaway. The guaranty agreement states that the obligations of the guarantor shall not be excused if PGB is released from any of its obligations. Exh. C. However, in the instant case, the release also released any of PGB's officers or shareholders, rather than just PGB. Accordingly, this clause in the guaranty is inapplicable to the situation at hand.

Finally, PGB's motion as to Pro Golf's claim for breach of contract is denied, the court finding that genuine issues of material fact remain.[2]

### IV. Conclusion

Based upon all of the foregoing, counter-defendant's Pro Golf of Birmingham's and Samuel Gannaway's motion for summary judgment is **GRANTED** in part and **DENIED** in part. The motion is hereby **GRANTED** as to Pro Golf of America's claim for breach of the guaranty agreement by Samuel Gannaway. The motion is hereby **DENIED** as to Pro Golf of America's claim for breach of contract.

**DONE** and **ORDERED** this the 5 day of February 2003.

Inge P. Johnson
U.S. District Judge

---

[2] The court notes that the parties have engaged in argument regarding Pro Golf's counter-claim for breach of a covenant not to compete. However, since Pro Golf does not have a counter-claim for breach of a covenant not to compete, such argument is purely academic and there is nothing for the court to rule on in that regard.